2373

Virginia S. ROBINSON, Respondent v.
William Brooks TYSON, III, Appellant.

(461 S.E. (2d) 397)

Court of Appeals

*Mary Layton Wells*, of *Scott & Roberts*, Florence, *for appellant.*

*Joseph W. McGowan, III*, Laurens, *for respondent.*

Heard June 7, 1995; Decided July 3, 1995.

Amend. & Ref. on Den. of Reh. Aug. 11, 1995.

## ORDER TO WITHDRAW ORIGINAL
## OPINION AND TO SUBSTITUTE OPINION

*Per Curiam:*

The previous Opinion in the above-referenced case, filed July 3, 1995, is hereby withdraw and the Amended Opinion is substituted and attached hereto.

It is so ordered.

CURETON, Judge:

Virginia S. Robinson (the mother) brought this action against William Brooks Tyson, III (the father) seeking an increase in child support, and the dependent income tax deduction for the parties' daughter. The family court awarded an increase in child support based on income imputed to the father, finding him voluntarily underemployed. The court also awarded the mother the state and federal income tax deduction for the parties' daughter and $1,500 in attorney fees. The father appeals. We affirm.

The parties were divorced on March 16, 1984. The parties entered into a settlement agreement which the family court "made a part and parcel" of its order. The mother received custody of the parties' two children. The court ordered the father to pay child support of $300 per month until he became

gainfully employed, at which time he was ordered to notify the court, and the court would increase his child support to $375 per month. The mother agreed not to seek an increase in support for one year. The court granted the father the dependent income tax deduction for the daughter and the wife the deduction for the son.

In July, 1984, the father petitioned the family court to reduce his child support obligation because he was still unemployed. The court ordered his obligation reduced to $200 per month until he became gainfully employed. The court further ordered that once he was employed, his support obligation automatically reverted back to $375 per month. The father paid $200 per month for ten years. During this ten-year period, he remarried, graduated from law school, passed the South Carolina bar examination, and practiced law with his father in Florence, South Carolina for two years before the mother initiated this action. At trial, the father testified his sole income was $700 per month. He presented no evidence of efforts to locate more remunerative employment nor did he have an idea of his possible earning potential. He further testified his wife was presently unemployed, and he often borrowed money from his father to live.

The mother introduced the deposition testimony of an attorney, who stated he recently hired two attorneys in the Florence area at a starting salary of $35,000 per year. He further stated he had hired paralegals with starting salaries of around $18,000 per year. Evidence was presented that the University of South Carolina Law School placement office reported the lowest starting salary for new attorneys in the Florence area was about $25,000 per year. Some eleven years prior to the court hearing and before the father returned to law school, he earned approximately $17,000 per year. The court imputed to the father an income of $30,000 per year, and ordered child support of $522.06 per month based on that imputed income as required by the Child Support Guidelines.

In an action on appeal from the family court, this court has jurisdiction to find facts in accordance with our view of the preponderance of the evidence. *Epperly v. Epperly*, 312 S.C. 411, 440 S.E. (2d) 884 (1994). This broad scope of review does not require us, however, to disregard the findings of the family court judge, who saw and heard the wit-

nesses, nor does it relieve an appellant of the burden of convincing this Court that the family court judge committed error. *Skinner v. King*, 272 S.C. 520, 252 S.E. (2d) 891 (1979); *Bramlett v. Davis*, 289 S.C. 85, 344 S.E. (2d) 867 (Ct. App. 1986).

## I.

The father argues the family court erred in increasing his child support on the basis of imputed income not supported by the evidence, or in the alternative, in imputing income in the amount of $30,000 per year. We disagree. Under the Child Support Guidelines, "income" is defined as "the actual gross income of the parent, if employed to full capacity, or potential income if unemployed or underemployed." 27 S.C. Code Ann. Regs. 114-4720(A)(5) (Supp. 1994). The Guidelines provide further:

> *Potential Income.* If the court finds that a parent is voluntarily unemployed or under employed, it should calculate child support based on a determination of potential income which would otherwise ordinarily be available to the parent. . . .
>
>     *     *     *     *     *     *
>
> (b) In order to impute income to a parent who is unemployed or under employed, the court should determine the employment potential and probable earning level of the parent based on the parent's recent work history, occupational qualifications, and prevailing job opportunities and earning levels in the community.

27 S.C. Code Ann. Regs. 114-4720(A)(5)(b) (Supp. 1994). The amount of child support ordered is within the discretion of the trial court. *Smith v. Smith*, 264 S.C. 624, 216 S.E. (2d) 541 (1975). Where a father voluntarily lessens his earning capacity, this court will closely scrutinize the facts to determine the father's capacity to earn, rather than his actual earnings. *See Camp v. Camp*, 269 S.C. 173, 236 S.E. (2d) 814 (1977); *Chastain v. Chastain*, 289 S.C. 281, 346 S.E. (2d) 33 (Ct. App. 1986).

Based on the evidence of the father's occupational qualifications, prevailing job opportunities, earning levels in the community, and his insincere efforts to provide the trial court with evidence of his earning potential, we affirm the family

court's finding that the father is voluntarily underemployed. The father has been practicing law for over two years. The only objective evidence presented at trial of the minimum salary for inexperienced attorneys in the Florence area was between $24,000 and $40,000 per year and that recently graduated paralegals earned around $18,000 per year. The husband made no effort to show what his earning potential is and we are convinced he can earn more than $700 per month. While we applaud the husband's law firm's charitable resolve to provide legal services to those in poverty, he is required to be responsible to his children before he is charitable to others. We find no abuse of discretion by the family court in imputing an income of $30,000 per year to the husband and, therefore, affirm the child support award.

## II.

The father also argues the family court erred in modifying the divorce decree by granting the dependent tax deduction for the daughter to the mother. We disagree. As we read the parties's briefs, the father's claim is that the family court did not have subject-matter jurisdiction to modify the tax exemption status of the parties because the previous award was contractually based and the court had no jurisdiction to modify it pursuant to *Moseley v. Mosier*, 279 S.C. 348, 306 S.E. (2d) 624 (1983). The separation agreement in the instant case was entered into in March 1984 and is governed by *Moseley*.

Both parties have argued the case of *Abbott v. Gore*, 304 S.C. 116, 403 S.E. (2d) 154 (Ct. App. 1991) supports their respective positions. In Abbott, we reversed the family court's holding that the mother's pleading had requested the court award her the tax exemption because the mother's pleading requested child support and the exemption "touched on the issue of child support." We held that "though of some relation, it is a separate issue" from child support. Here, of course, the mother has pled her right to the exemption. The question then becomes whether the modification of an agreed tax exemption falls within the ambit of the pervasiveness of the Supreme Court's statement in *Moseley* that family courts shall have "continuing jurisdiction to do what is in the best interest of the child regardless of what the separation agreement speci-

fies." We hold it does not. Clearly, the quoted language from *Moseley* relates to matters that directly affect the best interests of the child, not to matters that may incidently or indirectly affect them. Certainly, almost any aspect of a divorce settlement could indirectly affect a child. Undisputably, the Su-preme Court did not intend for issues of alimony and equitable distribution to be modifiable irrespective of the terms of the separation agreement, although they may most certainly indirectly affect children caught up in divorce proceedings.

We hold, however, that the father has misinterpreted *Moseley*. In *Moseley*, our Supreme Court decreed that thereafter "all domestic matters, whether by decree or by agreement, will vest in the family court." *Accord, Skipper v. Skipper*, 290 S.C. 412, 351 S.E. (2d) 153 (1986). *Moseley* further states that the parties may by agreement exclude the family court of jurisdiction to modify any aspect of a separation agreement, except matters affecting children. It states further that unless the "agreement unambiguously denies the court jurisdiction, the terms will be modifiable by the court. . . ." Moreover, any provision in the settlement agreement denying the court jurisdiction must be "explicit, clear and plain." Applied in *Cathcart v. Cathcart*, 307 S.C. 322, 323-25, 414 S.E. (2d) 811, 812 (Ct. App. 1992); *see also Calvert v. Calvert*, 287 S.C. 130, 336 S.E. (2d) 884 (Ct. App. 1985). Barring a plain provision regarding non-modifiability, the settlement terms will be assumed to be "judicially decreed" and modifiable. *Moseley*, 279 S.C. at 353, 306 S.E. (2d) at 627.

We have reviewed the 1984 Property Settlement Agreement as contained in the Decree of Divorce and find no provision excluding the family court of jurisdiction to modify the tax deduction status of the parties. We thus find the family court had subject-matter jurisdiction to modify the tax deduction award. As noted above, we have not been asked to determine whether or not the family court abused its discretion in modifying the tax deduction award. We refuse to reach the abuse of discretion issue.

### III.

The father finally argues the court erred in awarding the mother $1,500 in attorney fees. We disagree. An award of attorney fees rests within the sound discre-

tion of the trial judge and should not be disturbed on appeal absent an abuse of discretion. *Ariail v. Ariail*, 295 S.C. 486, 369 S.E. (2d) 146 (Ct. App. 1988). In family court matters the trial judge is given broad discretion in this area. *Edens v. Edens*, 273 S.C. 303, 255 S.E. (2d) 856 (1979). We find no abuse of discretion in requiring the husband to pay $1,500 of the wife's attorney fees. We find sufficient evidentiary support in the record for the award of attorney fees. *See Blumberg v. Nealco, Inc.*, 307 S.C. 537, 416 S.E. (2d) 211 (Ct. App. 1992), *aff'd as modified*, 310 S.C. 492, 427 S.E. (2d) 659 (1993); *Glasscock v. Glasscock*, 304 S.C. 158, 403 S.E. (2d) 313 (1991).

Accordingly, the order of the family court is

Affirmed.

SHAW and CONNOR, JJ., concur.